[Tagged]



**ORDERED in the Southern District of Florida on March 27, 2013.**

Erik P. Kimball, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

In re:                                              Case No. 10-25535-EPK

JOHN E. BENEVENTO,                                  Chapter 7

        Debtor.

_____/

THE CADLE COMPANY OF
CONNECTICUT, INC.,

        Plaintiff,

v.                                                  Adv. Proc. No. 11-01011-EPK

JOHN E. BENEVENTO,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S AMENDED MOTION FOR SANCTIONS

THIS MATTER came before the Court upon the *Defendant's Amended Motion for Sanctions Against the Cadle Company of Connecticut, Inc., James T. Haley, Esquire, and the Law Firm of Haley and Jhones, P.A., Jointly and Severally, Pursuant to the Inherent*

*Power of the Court* [ECF No. 146] (the "Second Motion for Sanctions") filed by John E. Benevento (the "Defendant") and the *Response to Defendant's Amended Motion for Sanctions Against the Cadle Company of Connecticut, Inc., James T. Haley, Esquire and the Law Firm of Haley & Jhones, P.A., Jointly and Severally, Pursuant to the Inherent Power of the Court* [ECF No. 151] (the "Response") filed by The Cadle Company of Connecticut, Inc. ("the Plaintiff"), James T. Haley ("Mr. Haley"), and Haley & Jhones, P.A. (the "Firm"). The Defendant seeks sanctions under the Court's inherent power, including an award of attorneys' fees, against the Plaintiff, Mr. Haley, and the Firm[1] due to their filing and pursuit of this adversary proceeding against the Defendant, as well as their conduct in pursuing discovery.[2] For the reasons set forth below, the Court will deny the Second Motion for Sanctions.

## I.    Background

On June 2, 2010, the Defendant filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* The § 341[3] meeting of creditors was initially scheduled for July 13, 2010. Therefore, the deadline for the Plaintiff to file a complaint objecting to the Defendant's discharge under § 727 was September 13, 2010. Fed. R. Bankr. P. 4004(a) and 9006(a)(1)(C). Upon the consent of the parties, this deadline was subsequently extended to November 13, 2010 and then to January 13, 2011. Prior to

---

[1] In the Second Motion for Sanctions, the Defendant seeks sanctions against the Plaintiff, Mr. Haley, and Haley & Jhones, P.A. While the majority of the documents filed by Mr. Haley in this matter— including the Complaint and the Response—state that Mr. Haley's firm is named Haley & Associates, P.A., other documents, such as the Plaintiff's *Notice of Appeal* [ECF No. 117], state that Mr. Haley's firm is named Haley & Jhones, P.A. For purposes of this Order, the Court assumes that Haley & Jhones, P.A. was Mr. Haley's firm at all relevant times.

[2] As discussed below, it is unclear whether the Defendant seeks sanctions related to discovery abuse against the Plaintiff, Mr. Haley, and the Firm, or whether the Defendant seeks such sanctions solely against Mr. Haley.

[3] Unless otherwise indicated, the symbols "§" and "§§" refer to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

January 7, 2011, the Plaintiff engaged in discovery under Federal Rule of Bankruptcy

Procedure 2004.

On January 7, 2011, the Plaintiff, through its counsel Mr. Haley, filed its *Complaint*

[ECF No. 1], seeking to deny the Defendant a discharge pursuant to §§ 727(a)(2)(A), (a)(3),

(a)(4)(D), and (a)(5).  Around this time, the Plaintiff served multiple subpoenas on several

third parties under Fed. R. Bankr. P. 2004.  This prompted the Defendant to file his *Motion*

*for Protective Order Pursuant to Local Rule 2004-1(C) as to Certain Notices of Rule 2004*

*Examination* [Case No. 10-25535-EPK, ECF No. 67] and *Amended Motion for Protective*

*Order Pursuant to Local Rule 2004-1(C) as to Certain Notices of Rule 2004 Examination*

[Case No. 10-25535-EPK, ECF No. 68] (together, the "January Motions for Protective

Order") in which the Defendant sought an order quashing the subpoenas.

The Court set a hearing on the January Motions for Protective Order on January 27,

2011.  During that hearing, Mr. Haley stated:

> July 4 of last year I shredded my achilles heel, and for about sixty days I was on
> crutches and in a cast, and that slowed me down a little.  Mr. Rosen[4] was kind
> enough to grant two motions extending my client's time within which to file a
> 727 action.  I made two requests for production of documents on the [Defendant].
> The [Defendant] produced some documents, and I did not get the documents
> that I felt would properly let me analyze the potential 727 action.  Right before
> the holidays I had prepared some additional 2004 discovery, and that's the basis
> of the motion.  What happened was, my client elected not to request the
> [Defendant] for an additional extension of time on the 727 action. It was filed
> January 7.  I didn't catch the fact that the discovery had 2004 on them as
> opposed to being sent out in the adversary action.  And the discovery is really
> directed towards the allegations in the adversary action.

Case No. 10-25535-EPK, ECF No. 128, Hearing Trans. 1/27/11, p.8, l.19 – p.9, l.14.

Following the January 27, 2011 hearing, the Court entered an order: (a) deeming the

subpoenas as having been served under Fed. R. Bankr. P. 7034; (b) extending the time to

---

[4] Eric A. Rosen, Esq. is the Defendant's counsel in this adversary proceeding and in the main
bankruptcy case.

respond to the subpoenas; and (c) preserving the Defendant's right to seek entry of a protective order as to any of the subpoenas. Case No. 10-25535-EPK, ECF No. 97.

On April 1, 2011, Eric A. Rosen, Esq. ("Mr. Rosen"), the Defendant's counsel, took the deposition of Denise Harkless ("Ms. Harkless"), an account officer employed by the Plaintiff. At the deposition, Ms. Harkless answered in the affirmative when asked by Mr. Rosen if she was "the person at [the Plaintiff] that has primary responsibility for" the Defendant's file, ECF No. 146-1, Denise Harkless Depo. 4/1/11, p.13, ll.9-11, and answered in the affirmative when asked if she "had primary responsibility and, in fact, sole responsibility for the collection of this debt internally . . . ." ECF No. 146-1, Denise Harkless Depo. 4/1/11, p.14, ll.19-23.  Later during the deposition, the following exchange took place between Mr. Rosen and Ms. Harkless:

> Q     We can go through all of these factual allegations in the Complaint, but just so the record's clear, are you prepared to testify today that as of today you do not have any personal knowledge with respect to any of the facts that are alleged in this Complaint other than what's a matter of public record?
>
> A     Correct.

ECF No. 146-1, Denise Harkless Depo. 4/1/11, p.32, l.20 – p.33, l.1.

On April 4, 2011, the Plaintiff filed the *Plaintiff's Motion for Order Continuing and Rescheduling Pre-Trial Conference* [ECF No. 18] (the "Motion to Continue Pretrial"), in which the Plaintiff sought to continue the pretrial conference scheduled for April 14, 2011 in order to take additional discovery.  The Defendant responded on April 12, 2011 by filing his *Statement of Defendant John E. Benevento: (1) In Opposition to Motion of Cadle Company of Connecticut, Inc. to Continue Pre-Trial Conference and Conduct Additional Discovery and (2) In Support of Motion for Entry of Protective Order Forbidding Additional Discovery, Pursuant to Rule 7026(c)(1)(A) of the Federal Rules of Bankruptcy Procedure* [ECF No. 24] (the "April Motion for Protective Order").  In his April Motion for Protective

4

Order, the Defendant sought an order denying the Motion to Continue Pretrial, as well as a protective order barring the Plaintiff from conducting any additional discovery in the adversary proceeding pursuant to Fed. R. Civ. P. 26(c)(1)(A), made applicable by Fed. R. Bankr. P. 7026. In the April Motion for Protective Order, the Defendant alleged that the Plaintiff was engaged in a "fishing expedition" and stated that the Defendant "and his wife have become increasingly annoyed, and thoroughly embarrassed due to [the Plaintiff's] acts." The Defendant went on to reference the deposition of Ms. Harkless, and stated that "[the Plaintiff] commenced this adversary proceeding notwithstanding the fact that, by its own repeated admissions under oath, no one at [the Plaintiff] had any personal knowledge of any of the material allegations in the complaint . . . ." The Plaintiff filed a response opposing the April Motion for Protective Order on April 13, 2011. ECF No. 26.

The Court held a hearing on the Motion to Continue Pretrial and the April Motion for Protective Order on April 14, 2011. At the hearing, the Court expressed its concern regarding Ms. Harkless' answer in her deposition concerning her personal knowledge and asked Mr. Haley, "How is this not a Rule 11 problem?" ECF No. 78, Hearing Trans. 4/14/11, p.8, ll.11-12. However, the Court later stated at the close of the hearing:

> I'm not ruling on [the issue of Ms. Harkless' deposition answer] right now and not taking it into account. If there are other issues addressed in the deposition that I should take note of in connection with a matter that might later come before the Court, I will do so. I just point out that what was alleged by Mr. Rosen, and the argument that got my attention obviously, was that I became concerned that there was a complaint not supported by facts that were in existence or reasonably believed to exist at the time that the complaint was filed. That's not proper. Perhaps I am wrong and there are other answers and other data that support the complaint as filed, but that's not before me today.

ECF No. 78, Hearing Trans. 4/14/11, p.22, l.13 – p.23, l.1. As to the Defendant's request for entry of a protective order barring all further discovery, the Court stated:

> It is reasonable to have discovery go forward in this case. There are a large number of depositions that have been noticed. Just the fact that it is a large number by itself is not sufficient to show that there's an undue burden on the

5

defendants.  I am going to deny the relief requested by the [Defendant] in the response, without prejudice, Mr. Rosen, to specific motions for protective order. The broad relief you requested was [ ] no discovery at all. I'm not going to do that, obviously.  If there are issues that come up, where there are proper motions under the rules in our local rules for protective order, file them, and I will certainly consider it.  I think that given the nature of the data that is requested, it would be improper for me to either completely shut down discovery, or require that this be the sole . . . pretrial date.

ECF No. 78, Hearing Trans. 4/14/11, p.21, l.6-24.  Subsequently, the Court entered an order continuing the pretrial conference to August 11, 2011 and denying the April Motion for Protective Order. ECF No. 30.

The Court held a trial in the adversary proceeding on November 14, 2011, February 28, 2012, March 23, 2012, and April 3, 2012.[5]  The parties subsequently submitted post-trial briefs in the form of proposed findings of fact and conclusions of law.

On February 3, 2012, the Defendant served on the Plaintiff—but did not file—the *Defendant's Motion for Sanctions Against the Cadle Company of Connecticut, Inc. and It's Counsel, Pursuant to Rule 9011(b)(1) and (b)(3) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code* (the "First Motion for Sanctions"). The Plaintiff did not voluntarily dismiss or otherwise withdraw the Complaint within the twenty-one day safe harbor period under Fed. R. Bankr. P. 9011(c)(1)(A).

On August 14, 2012, the Court entered its *Final Judgment* [ECF No. 106] and accompanying *Memorandum Opinion* [ECF No. 105], ruling in favor of the Defendant on all

---

[5] Based on the suggestion of the parties at the September 7, 2011 pretrial conference, the Court initially scheduled a single day—November 14, 2011—for trial.  At the end of the November 14, 2011 proceeding, the trial had not been completed and the Court scheduled an additional half-day of trial on February 28, 2012.  Presentation was still not complete on that date, and so the Court continued the trial to two additional days, March 23 and April 3, 2012.  This resulted in a four-day trial conducted over the span of four and a half months.  The primary reason for the extended period of trial in this case was the failure of the Plaintiff to properly prepare for trial.  The Defendant did not object to the extension of trial.  Nevertheless, the Court was perhaps too generous in giving the Plaintiff additional time to attempt to present its case.  As is apparent from the Court's *Memorandum Opinion* [ECF No. 105], in spite of having ample time to prepare and put on its case,

counts of the Complaint.[6]

On August 15, 2012, the day following entry of judgment in this case, the Defendant filed the First Motion for Sanctions [ECF No. 109].  In the First Motion for Sanctions, the Defendant alleged: (a) that the Plaintiff filed the Complaint in spite of Ms. Harkless' admission that she had no personal knowledge of the material allegations in the Complaint; (b) that the Plaintiff persisted in bringing the adversary proceeding to trial, "even though the only witness it called was the [Defendant], while relying on deposition testimony obtained from third parties, none of which provided support for its claims"; (c) that "[t]he effect [the Plaintiff's] 'scorched earth' method of pursuing its baseless claims has had upon the [Defendant] and his wife has been devastating, both emotionally and financially"; and (d) that "[t]he Complaint was filed, and pursued, for an improper purpose – gouging funds from [the Defendant] who is entitled to a fresh financial start."  Specifically, the Defendant stated that:

> [The Plaintiff] filed the Complaint notwithstanding the undisputed fact that, as evidenced by repeated admissions under oath by the person at [the Plaintiff] with the most knowledge of, and who bears primary responsibility for its file regarding the [Defendant], no one at [the Plaintiff] had any personal knowledge of any of the material allegations in the Complaint . . . This is a prima facie violation of Rule 9011(b)(3), which requires that the allegations and other factual contentions in any paper have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

ECF No. 109, First Motion for Sanctions, p.2, ¶2.  The Defendant sought sanctions against the Plaintiff and Mr. Haley pursuant to Fed. R. Bankr. P. 9011(b)(1) and (3), and § 105(a).

At a September 13, 2012 hearing on the First Motion for Sanctions, the Court asked Mr. Rosen whether, by citing § 105(a), the Defendant also sought sanctions under the

---

the Plaintiff's presentation was woefully inadequate.
[6] The Plaintiff appealed the Final Judgment and such appeal is currently pending before the United States District Court.

Court's inherent power,[7] and Mr. Rosen responded that the Defendant was indeed seeking sanctions under the Court's inherent power, stating "[a]s far as I'm concerned, the entire proceeding was one giant bad faith violation." ECF No. 138, Hearing Trans. 9/13/12, p.7, l.16 – p.8, l.6.  At the hearing, Mr. Haley argued, among other things, that the First Motion for Sanctions was untimely, but did not point to any legal support for this argument.[8] ECF No. 138, Hearing Trans. 9/13/12, p.9, l.17 – p.10, l.22.  Based on the colloquy among counsel and the Court, at the close of the hearing the Court stated that it would deem the First Motion for Sanctions to include a request for sanctions against the Plaintiff and Mr. Haley pursuant to the Court's inherent power to impose sanctions, and directed the Plaintiff and Mr. Haley to file a written response to the First Motion for Sanctions. ECF No. 138, Hearing Trans. 9/13/12, p.15, ll.4-18.

After the September 13, 2012 hearing, the Court became aware of binding case law to the effect that the Defendant's request for sanctions under Fed. R. Bankr. P. 9011 was not timely filed and must be denied.  Accordingly, on September 24, 2012 the Court entered its *Order Denying Defendant's Motion for Sanctions Under Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a), Deeming Defendant's Motion for Sanctions as a Motion for Sanctions Under the Court's Inherent Power, and Directing Plaintiff and Plaintiff's Counsel to Respond to Defendant's Motion for Sanctions* [ECF No. 132] (the "September 24th Order").  In the

---

[7] Sanctions awarded under the Court's inherent power are distinct from sanctions awarded under § 105(a). *See In re Evergreen*, 570 F.3d 1257, 1273 (11th Cir. 2009).  In the First Motion for Sanctions, the Plaintiff cited § 105(a).  A court may award sanctions under § 105(a) "if a party violates a court order or rule." *In re Evergreen*, 570 F.3d at 1273.  Courts also have the inherent power to enter sanctions and the "[i]nvocation of [this power] requires a finding of bad faith." *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir. 1995).  The Court questioned Mr. Rosen because there was no allegation in the First Motion for Sanctions that the Plaintiff or Mr. Haley had violated a court order or rule.  Instead, the Defendant's argument in the First Motion for Sanctions focused on the Plaintiff's alleged bad faith conduct.

[8] The First Motion for Sanctions was filed on August 15, 2012, and the hearing thereon was held on September 13, 2012.  The Plaintiff had nearly a month to perform research and otherwise prepare for the hearing.  As at trial, the Plaintiff was ill prepared.

September 24th Order, the Court ruled that:

> As to the Defendant's request for sanctions under Rules 9011(b)(1) and (b)(3) of the Fed. R. Bankr. P., the [First Sanctions Motion] is not timely. "[T]he service and filing of a motion for [Rule 9011] sanctions must occur prior to final judgment or judicial rejection of the offending motion." *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1309 (11th Cir. 2008) (internal citation and quotation omitted) (emphasis supplied). To the extent the Defendant seeks sanctions pursuant to Fed. R. Bankr. P. 9011(b)(1) and (b)(3), the [First Sanctions Motion] will be denied.

In the September 24, 2012 Order, the Court also denied the First Sanctions Motion to the extent the Defendant sought sanctions under § 105(a), deemed the First Sanctions Motion as one seeking sanctions pursuant to the Court's inherent power, and directed the Plaintiff and Mr. Haley to file a written response to the First Sanctions Motion.

On October 22, 2012, the Plaintiff, Mr. Haley, and the Firm filed their joint *Response to Defendant's Motion for Sanctions* [ECF No. 143], arguing, among other things, that the First Motion for Sanctions—now deemed as one seeking only inherent power sanctions—did not contain any specific allegations of bad faith conduct and thus did not afford the Plaintiff, Mr. Haley, or the Firm basic due process. The Court found this argument compelling[9] and, on November 1, 2012, entered its *Order Setting Deadline for Defendant to File Amended Motion for Sanctions, and Setting Deadline for Plaintiff and Plaintiff's Counsel to Respond Thereto* [ECF No. 144] (the "November 1st Order"). In the November

---

[9] Before imposing sanctions under its inherent power, a court "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees [.]" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

> Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why. Notice can come from the party seeking sanctions, from the court, or from both. In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions.

*In re Mroz*, 65 F.3d at 1575-76 (11th Cir. 1995) (citation omitted).

1st Order, the Court set a deadline for the Defendant to file an amended motion for inherent power sanctions with specific allegations of bad faith against the Plaintiff and Mr. Haley, and set a deadline for the Plaintiff and Mr. Haley to file a written response thereto. The parties complied by filing the Second Motion for Sanctions and the Response.

## II.     The Second Motion for Sanctions

In the Second Motion for Sanctions, the Defendant seeks inherent power sanctions against the Plaintiff, Mr. Haley, and the Firm due to their alleged bad faith: (a) filing and prosecution of the Complaint and (b) pursuit of discovery.[10]

### A.     Filing and Prosecution of the Complaint

The Defendant asserts that the Plaintiff, through Mr. Haley, filed and aggressively prosecuted the Complaint through trial "notwithstanding the sworn testimony of the only person at [the Plaintiff] with knowledge of its file regarding the Defendant that neither she nor anyone else at [the Plaintiff] had any personal knowledge of any of the material allegations in the Complaint except for what was a matter of public record." ECF No. 146, Second Motion for Sanctions, pp.1-2, ¶1. The Defendant further asserts that the Plaintiff, prior to filing the Complaint, had completely failed to "obtain evidentiary support for the material allegations advanced in the Complaint," but notwithstanding such failure,

---

[10] It is unclear whether the Defendant seeks sanctions related to discovery abuse against the Plaintiff, Mr. Haley, and the Firm, or whether the Defendant seeks such sanctions against Mr. Haley alone. The portion of the Second Motion for Sanctions dealing with discovery abuse is titled "CADLE ACTED IN BAD FAITH IN CONNECTION WITH DISCOVERY," ECF No. 146, Second Motion for Sanctions, p.16, and the Defendant states in Paragraph 49 that "[s]ome of the discovery tactics and lines of questioning employed by [the Plaintiff and Mr. Haley] do not appear to serve any purpose other than to embarrass the Defendant and his family." ECF No. 146, Second Motion for Sanctions, p.16. However, the sole specific allegation of discovery abuse asserted by the Defendant is directed only at Mr. Haley, and as to this the Defendant states that "[i]n this specific instance, there is no evidence that [the Plaintiff] instructed its counsel [to engage in the conduct in question]. Accordingly, [Mr. Haley], and not [the Plaintiff], should be sanctioned for such conduct." ECF No. 146, Second Motion for Sanctions, p.18, ¶53. In light of the Court's ruling here, it is not necessary to address which party or parties the request was intended to cover.

"instructed Mr. Haley to file the Complaint," even despite Mr. Haley's belief that "he

needed more time to conduct due diligence . . . ." ECF No. 146, Second Motion for Sanctions,

p.2, ¶2.  The Defendant states that:

> [The Plaintiff's] direction to [Mr. Haley] to file the Complaint, and [Mr. Haley's]
> filing of same, when both [the Plaintiff and Mr. Haley] knew that neither of
> them had sufficient evidence to support the material allegations therein, was a
> knowing, reckless and intentional pursuit of frivolous litigation by both of them.
> This constitutes bad faith as a matter of law, and warrants the imposition of
> sanctions against [the Plaintiff and Mr. Haley], jointly and severally, pursuant
> to this Court's inherent powers.

ECF No. 146, Second Motion for Sanctions, p.2, ¶3.

The Defendant points to the January 27, 2011 hearing, during which Mr. Haley stated:

> I did not get the documents that I felt would properly let me analyze the
> potential 727 action.  Right before the holidays I had prepared some additional
> 2004 discovery, and that's the basis of the motion.  What happened was, my
> client elected not to request the debtor for an additional extension of time on the
> 727 action.  It was filed January 7.

ECF No. 146, Second Motion for Sanctions, p.4, ¶9; Case No. 10-25535-EPK, ECF No. 128,

Hearing Trans. 1/27/11, p.9, ll.2-10.  From this, the Defendant alleges that Mr. Haley "had

not 'made a reasonable inquiry [i]nto the underlying facts' in order to determine whether

the filing of this adversary proceeding was proper," but nonetheless filed the Complaint

upon the Plaintiff's direction. ECF No. 146, Second Motion for Sanctions, p.4, ¶10.

Therefore, according to the Defendant, the Plaintiff's "instruction to [Mr. Haley] to file the

Complaint, and [Mr. Haley's] filing and pursuit of the Complaint, without first properly

conducting its due diligence with regard to the [Defendant's] particular affairs was in and of

itself an act of bad faith as a matter of law." ECF No. 146, Second Motion for Sanctions, p.5,

¶11.

    To bolster its argument, the Defendant addresses specific allegations made in

Counts I, II, and III of the Complaint.

    As to several of the Count I allegations, the Defendant states that the Plaintiff and

Mr. Haley "knew or reasonably should have known that the [specific allegation being discussed] was false at the time it was made," ECF No. 146, Second Motion for Sanctions, p.7-8, ¶19; p.8, ¶22; p.9, ¶26.  For other Count I allegations, the Defendant states that the offending allegation "was reckless and completely frivolous as a matter of law," ECF No. 146, Second Motion for Sanctions, p.9, ¶23, or "was false at the time it was made," ECF No. 146, Second Motion for Sanctions, p.10, ¶¶29 & 30; p.12, ¶36.  As to another allegation, the Defendant asserts that the Plaintiff and Mr. Haley "knew, or reasonably should have known in view of [the "Plaintiff's] opportunity to conduct extensive [pre-Complaint] discovery," that the allegation was false "at the time Complaint was filed." ECF No. 146, Second Motion for Sanctions, p.11, ¶34.  As to the allegation in the Complaint that the Defendant "'has failed to conduct his financial affairs with honesty and openness,'" the Defendant states that, in light of the Plaintiff's pre-Complaint discovery opportunities, such allegation was "false, reckless and made in bad faith." ECF No. 146, Second Motion for Sanctions, p.12, ¶37.

As to the allegation in Count II of the Complaint "that the Defendant 'concealed, falsified, failed to keep or preserved [sic] recorded information' and failed to produce or keep records necessary to determine his financial condition," the Defendant asserts that:

> [The Plaintiff and Mr. Haley] had no personal knowledge or evidence of any such alleged failure by the Defendant.
>
> * * *
>
> [Mr. Haley] conducted significant discovery prior to the filing of the Complaint . . . and significant discovery during the adversary proceeding.  Despite finding no evidence to support these claims, and being presented with documents and testimony from multiple parties that directly contradicted these claims, [the Plaintiff and Mr. Haley] proceeded to trial anyway.

ECF No. 146, Second Motion for Sanctions, pp.13-14, ¶¶40-41.

As to Count III of the Complaint, the Defendant states that, in light of pre-

Complaint discovery, the allegation "that the Defendant failed to provide documents requested by the Panel Trustee" was made and then pursued through trial without "any evidence to support the claim, was reckless, frivolous and constituted bad faith conduct by both [the Plaintiff] and [Mr. Haley] as a matter of law." ECF No. 146, Second Motion for Sanctions, p.14, ¶42.  As to the allegation in Count III "that the Defendant has not explained 'why he lives his life in financial stealth,'" the Defendant asserts that the Plaintiff and Mr. Haley made this allegation and pursued it through trial even though Mr. Haley "conducted sufficient discovery prior to filing the Complaint to be able to determine the manner in which the Defendant manages his financial affairs, and was not able to find any evidence to support this allegation." ECF No. 146, Second Motion for Sanctions, p.14, ¶43.

Specifically regarding the Plaintiff's continuing prosecution of the Complaint, the Defendant points to the April 14, 2011 hearing on the Motion to Continue Pretrial and the April Motion for Protective Order in support of his argument.  As discussed above, the following exchange between the Court and Mr. Haley took place at that hearing:

> THE COURT: Let's jump to a different argument that Mr. Rosen made that got my attention, and that is, that there is a deposition taken of your client representative who appeared to be the sole person with direct knowledge with regard to potential claims alleged in the complaint, and she essentially testified that she had no personal knowledge of any of the factual allegations in the complaint, except where they were specifically stated to refer to real estate records, for example. Other than that, the general allegations, for example the potential concealment, seem to be completely unsupported. How is this not a Rule 11 problem?
>
> MR. HALEY: I don't think it was completely unsupported. I think --
>
> THE COURT: By the way, I read the entire deposition, and I'm very troubled by her testimony, because this is the testimony of a plaintiff saying there's a complaint on file, and essentially she doesn't know what it says, she doesn't have personal knowledge of anything in it.

ECF No. 146, Second Motion for Sanctions, p.15, ¶44; ECF No. 78, Hearing Trans. 4/14/11,

p.7, l.25 – p.8, l.20.  Based on this exchange, the Defendant asserts that the Plaintiff's "callous and reckless behavior in continuing to prosecute this action through trial is all the more egregious."  ECF No. 146, Second Motion for Sanctions, p.15, ¶45.

The Defendant concludes that:

> The Complaint was based on allegations that [the Plaintiff] and [Mr. Haley] seemingly came up with on their own, since there was no evidence of any of these allegations prior to the filing of the Complaint.

> * * *

> Even after filing the Complaint, and conducting extensive discovery, despite the lack of evidentiary support for its claims and the warning of this court, [the Plaintiff] insisted on maintaining this action through trial.  The Complaint and the manner in which [the Plaintiff] pursued it through trial constitutes frivolous litigation that was not grounded in or based upon any evidence or personal knowledge, and both [the Plaintiff] and [Mr. Haley] are responsible.

ECF No. 146, Second Motion for Sanctions, pp.18-19, ¶¶54-55.

### B.    Pursuit of Discovery

The Defendant asserts that Mr. Haley engaged in "vexatious, wanton and oppressive bad faith conduct that can only be construed as being intended solely to hurt or embarrass the Defendant."  ECF No. 146, Second Motion for Sanctions, p.18, ¶52.  Specifically, the Defendant points to Mr. Haley's July 28, 2011 deposition of Brandon Benevento, the Defendant's adult son.  The purported purpose of this deposition was to gather information regarded the Defendant's alleged concealed interests in businesses and real estate.  During the deposition, the following exchange occurred between Mr. Haley and Brandon Benevento:

> Q.    Was there a point in time when your parents were involved in a divorce proceeding?

> A.    I don't know that, no.

> Q.    Do you have any knowledge as to whether or not there was a claim by your mother that the property should be split in the divorce proceeding?

14

> A.    I don't have any knowledge of a divorce proceeding.

ECF No. 146, Second Motion for Sanctions, p.17, ¶50; ECF No. 146-6, John Brandon

Benevento Depo. 7/28/11, p.139, ll.6-13.  The Defendant asserts that, at the time of the

deposition, Mr. Haley: (a) knew or should have known that questions about any divorce

proceeding were irrelevant, ECF No. 146, Second Motion for Sanctions, pp.17-18, ¶¶51-52;

and (b) knew that Brandon Benevento had no knowledge of the aborted divorce proceeding.

ECF No. 146, Second Motion for Sanctions, p.17, ¶52.   The Defendant states that such

questioning could not "reasonably lead to anything other than the embarrassment and

humiliation of the Defendant and his family." ECF No. 146, Second Motion for Sanctions,

p.18, ¶52.

## IV.    Analysis of the Second Motion for Sanctions

### A.    The Second Motion for Sanctions Is Untimely

The trial in the adversary proceeding concluded on April 3, 2012, and the Court

entered its Final Judgment and Memorandum Opinion on August 14, 2012.  Based on these

facts and upon the assertions made in the Second Motion for Sanctions, the Court finds that

all of the sanctionable conduct alleged by the Defendant to have been committed by the

Plaintiff, Mr. Haley, and the Firm occurred, and was discovered by the Defendant, <u>prior</u> to

this Court's entry of its Final Judgment and Memorandum Opinion.   "[W]here sanctionable

conduct occurs and is discovered before final judgment, a motion for sanctions pursuant to

the court's inherent power must be filed before entry of the court's final order[.]" *Peer v.*

*Lewis*, 606 F.3d 1306, 1315 n. 10 (11th Cir. 2010) (citing *Prosser v. Prosser*, 186 F.3d 403,

15

405-06 (3d Cir. 1999)).[11]  Therefore, the Second Motions for Sanctions is untimely and should be denied.

### B.    Inherent Power Sanctions Are Not Warranted

Even if the Second Motion for Sanctions had been filed prior to entry of judgment in this case, the Second Motion for Sanctions should still be denied because the Defendant could have timely presented a request for sanctions under Fed. R. Bankr. P. 9011 and a protective order under Fed. R. Civ. P. 26(c) and appropriate relief could have been ordered under those rules.  "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991).  While courts are not prohibited from sanctioning conduct "by means of the inherent power simply because that conduct could also be sanctioned under" various statutes or rules, *Chambers*, 501 U.S. at 50, "if appropriate sanctions can be imposed under provisions such as Rule 11, courts should not exercise their inherent power." *Peer*, 606 F.3d at 1315.  "But if in the informed discretion of the court, neither the statute[s] nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50.  "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Shepard v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).

Federal courts are vested with the "inherent power to control [their] proceedings and the conduct of the parties involved." *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1574 (11th

---

[11] As in the *Gwynn* case addressing a similar timing argument, neither party here cited the *Peer* or *Prosser* cases.  The Court notes that, several years prior to the Defendant's filing of the First Motion for Sanctions, the Court posted, with citation, the following quote from *Peer* on the attorney lectern in its courtroom:  "[A]ttorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process." 606 F.3d at 1316.  Precedent was literally staring each party's counsel in the face.

Cir. 1995).  This inherent power includes the power to impose sanctions against attorneys and parties. *Chambers,* U.S. at 45-46.  However, a high threshold must be satisfied in order for a court to impose sanctions under its inherent power. *Peer*, 606 F.3d at 1314-15.  A court may impose such sanctions when it finds that a person "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. 32 at 45-46 (internal quotation marks omitted).  Whereas Fed. R. Civ. P. 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith" in order to sanction a party under that rule, *Chambers*, 501 U.S. at 47, a court must find that a person subjectively engaged in bad faith conduct in order to sanction that person under the court's inherent power. *See In re Mroz*, 65 F.3d at 1576; *see Chambers*, 501 U.S. 32 at 47 n.11.

Subjective bad faith can be found in a number of circumstances.  A court may find subjective bad faith when a person files a complaint in spite of the fact that such person "was actually aware of, or had at least remained deliberately indifferent to, the factual and legal baselessness of the complaint." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1226 (3rd Cir. 1995).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (internal quotation marks omitted).  A party's continuation of litigation after it discovers that the allegations in the complaint are false is subjective bad faith conduct. *See In re Mroz*, 65 F.3d at 1574.  If a plaintiff files a complaint "without a reasonable inquiry into the underlying facts," and the defendant denies the allegations in the complaint, the plaintiff acts in subjective bad faith by continuing the litigation "without any attempts to verify the facts alleged." *See id.* at 1576.  "Further, continually advancing groundless and patently frivolous litigation is tantamount to bad faith." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) (internal quotation marks omitted).  "If

17

particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." *Barnes*, 158 F.3d 1214. Negligence or simple lack of due diligence is not subjective bad faith conduct. *See In re Mroz*, 65 F.3d at 1576.

In this case, Fed. R. Bankr. P. 9011 was up to the task of addressing the alleged wrongful filing and prosecution of the Complaint. Rule 9011(c) states that sanctions may be awarded if "the court determines that subdivision (b) has been violated . . . ." Rule 9011(b) provides, in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

When applying Fed. R. Bankr. P. 9011, courts may look to authority applying Fed. R. Civ. P. 11, because the two rules are substantively similar. *See In re Mroz*, 65 F.3d at 1572.

> When a court is confronted with a motion for sanctions under Rule 11 or Bankruptcy Rule 9011, it must first determine whether the party's claim is objectively frivolous, in view of the law or facts, and then, if it is, whether the person signing the document should have been aware that it was frivolous. In other words, we must inquire whether she would have been aware that it was frivolous if she had conducted a reasonable inquiry.

*Id.*, 65 F.3d at 1573 (citations omitted). "The purpose of Rule 11 is to deter baseless filings .

18

. . ." *Peer*, 606 F.3d at 1311.

As to the filing and prosecution of the Complaint, the Second Motion for Sanctions boils down to allegations that the Plaintiff and Mr. Haley: (a) failed to conduct a reasonable inquiry into the underlying facts in order to determine whether filing the Complaint was proper; (b) filed and pursued the Complaint, parts of which were frivolous as a matter of law, despite the lack of evidence to support certain material allegations contained therein; and (c) and knew or should have known that certain allegations in the Complaint were false at the time the Complaint was filed. If shown to be true, and contained in a timely filed motion, these allegations would have been sufficient to warrant the imposition of sanctions against the Plaintiff[12], Mr. Haley, and the Firm[13] pursuant to Fed. R. Bankr. P. 9011.[14] Indeed, as the Court stated on the record during at least two hearings in this case, noted above, it appears likely that sanctions were warranted under Rule 11. Unfortunately for the Defendant, he did not request such sanctions until it was too late.

Fed. R. Civ. P. 26(c)(1), made applicable to this case by Fed. R. Bankr. P. 7026,

---

[12] In the Second Motion for Sanctions, the Defendant alleges that the Plaintiff instructed Mr. Haley to file the Complaint in spite of a complete failure to obtain evidentiary support and in spite of Mr. Haley's belief that he needed more time to investigate. "Although typically levied against an attorney, a court is authorized to issue Rule 11 sanctions against a party even though the party is neither an attorney nor the signor of the pleadings." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001), *abrogation of unrelated holding recognized by Douglas Asphalt v. QORE, Inc.*, 657 F.3d 1146, 1151 (11th Cir. 2011). A party who did not sign the offending pleading may be "subject to sanctions when it is clear that he is the 'mastermind' behind the frivolous case." *Byrne v. Nezhat*, 261 F.3d at 1118. To be sanctioned, a party must have "some direct personal involvement in the management of the litigation and/or the decisions that resulted in the actions which the court finds improper under Rule 11." *Id.* at 1120 (citation omitted) (internal quotation marks omitted).

[13] Fed. R. Bankr. P. 9011(c)(1)(A) states that, "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."

[14] The Defendant's inclusion of wrongful continuing prosecution allegations in the Second Motion for Sanctions does not change the Court's conclusion that Fed. R. Bankr. P. 9011 was sufficient to address the alleged wrongful conduct, as these allegations are bound up with the overriding assertion that the Complaint was improperly filed in the first instance. *See Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938, 943 (11th Cir. 1989) ("Rule 11 did not impose a continuing obligation . . . to amend [the] complaint, at least if the complaint was reasonably interposed in the first place." (emphasis supplied)).

would have sufficed to address the alleged wrongful pursuit of discovery in this case.  Rule 26(c)(1) provides, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery . . . [and] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

"[I]f a party objects to opposing counsel's manner of conducting discovery, including depositions, the proper remedy is to seek a protective order" under Rule 26(c). *McBride v. Rivers*, 170 F. App'x 648, 660 (11th Cir. 2006).

In the Second Motion for Sanctions, the Defendant seeks inherent power sanctions based on questioning during the July 28, 2011 deposition of Brandon Benevento regarding an allegedly aborted divorce of the Defendant and his wife.  The Defendant asserts that Mr. Haley engaged in "vexatious, wanton and oppressive bad faith conduct that can only be construed as being intended solely to hurt or embarrass the Defendant" and that such questioning could not "reasonably lead to anything other than the embarrassment and humiliation of the Defendant and his family." ECF No. 146, Second Motion for Sanctions, p.18, ¶52.

If the Defendant, through Mr. Rosen, wished to prevent such questioning of his son, he could have stopped the deposition, filed a motion for protective order, and brought this matter to the Court's attention in 2011.[15]  Instead, the Defendant waited until the following year, more than seven months after the last day of trial, to seek sanctions as a result of this line of questioning.  The Defendant may not at this late date substitute the Court's inherent power for the Rule 26 sanction it might have sought long ago.

---

[15]  Indeed, at a hearing on April 14, 2011, the Court stated to Mr. Rosen: "If there are issues that come up, where there are proper motions under the rules in our local rules for protective order, file

20

As to the filing of the Complaint and the pursuit of discovery, this is not a case like *Chambers v. NASCO, Inc.*; *Peer v. Lewis*; *Mroz v. Glatter*; or *Barnes v. Dalton,* where the court's inherent power to sanction is necessary to fill a gap left by the rules or statues.[16]  In *Chambers v. NASCO, Inc.*, the Supreme Court affirmed the district court's decision to rely on its inherent power to sanction after the district court determined that Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 were insufficient to address much of the conduct at issue. 501 U.S. at 41-42.  In *Peer v. Lewis*, the Eleventh Circuit found that Rule 11 did not protect the defendant from the "hit and run"[17] abuse of the judicial process that had occurred, and that the defendant's only recourse lay in the district court's inherent power to sanction. 606 F.3d at 1315.  In *Mroz v. Glatter*, Eleventh Circuit found that the complaint was "reasonably interposed in the first place," that the sanctionable conduct occurred after the filing of the complaint, and therefore determined that Fed. R. Bankr. P. 9011 was not applicable. 65 F.3d at 1574.  And in *Barnes v. Dalton*, the Eleventh Circuit affirmed the district court's award of inherent power sanctions after the district court determined that it was unclear whether witness fees could be awarded as a sanction under 28 U.S.C. § 1927. 158 F.3d at 1213-14.

In this case, Fed. R. Bankr. P. 9011 and Fed. R. Civ. P. 26(c) were sufficient to

---

them, and I will certainly consider it." ECF No. 78, Hearing Trans. 4/14/11, p.21, ll.17-20.

[16] The Eleventh Circuit's decision in *In re Evergreen Sec., Ltd.* does not run counter to these decisions or provide support for the position that a court may use its inherent power when other provisions would suffice.  In *In re Evergreen Sec., Ltd.*, the bankruptcy court entered an order sanctioning an attorney pursuant to Fed. R. Bankr. P. 9011, § 105, and the court's inherent power. 384 B.R. 882, 938 (Bankr. M.D. Fla. 2008).  However, no one raised the issue of whether inherent power sanctions were appropriate—in light of the fact that sanctions were also available under those other provisions—on appeal to either the district court, *see In re Evergreen Sec., Ltd.*, 391 B.R. 184 (M.D. Fla. 2008), or the Eleventh Circuit, *see In re Evergreen Sec., Ltd.* 570 F.3d 1257 (11th Cir. 2009).  Neither the district court nor the Eleventh Circuit addressed the issue.

[17] "When the attorney who violated Rule 11 withdraws from the case prior to opposing counsel obtaining clear evidence of the violation, a party cannot move for sanctions under Rule 11 because the offending attorney no longer has the authority to correct or withdraw the challenged pleading" within Rule 11's mandated twenty-one day safe harbor period. *Peer*, 606 F.3d at 1315.

21

address the wrongful conduct alleged by the Defendant.  That neither rule is now available to the Defendant because he failed to file timely motions thereunder does not change the Court's analysis.

### V.    Order

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Second Motion for Sanctions [ECF No. 146] is DENIED.

**###**

Copies furnished to:

Eric A. Rosen, Esq.

*Eric A. Rosen, Esq. is directed to serve a copy of this Order upon all appropriate parties and to file a certificate of service with the Court.*